0-3397 from the Western District of Missouri, United States v. Jackie Busey. Mr. Moss, we'll hear from you first. Thank you, Your Honor, and good afternoon. Steve Moss on behalf of Mr. Busey. Mr. Busey's supervised release was revoked below and he was sentenced to a 24-month term of incarceration. At that hearing, the government called ATF agent Cameron Miller, who was stationed in the Eastern District of Missouri, to provide evidence of the grade A and grade B violations. The government did not, however, call U.S. Deputy Marshal Thomas, who was stationed in Instead of calling Thomas, who the record is undisputed, it was undisputed below and seems to be undisputed on appeal, that there's really no justification or no reason offered why the government chose to not call Thomas as a witness, but instead elected to proceed through Miller. And again, Mr. Miller is someone that they did go to the expense of flying from the Eastern District of Tennessee. Evidence of Miller included that the firearm was found in plain view and also that Mr. Busey was seen leaving the bedroom of the apartment when the U.S. Marshal deputies breached the door. That's important because there was other evidence that drugs were thrown from a window. This was like a third story apartment and drugs were thrown from the window of that bedroom. So that's why that testimony is important. We did object to the admission of this hearsay evidence. The court did overrule that objection and we believe that ruling was error and we believe it was critical testimony that could have affected the outcome in this particular case. The Sixth Amendment and Federal Rule of Evidence 32.1 both require confrontation even at a supervised release hearing. They require confrontation and cross-examination as part of the minimum requirements of due process. Now, it's not absolute. Certainly, the district court was entitled to excuse confrontation and disregard those needs if good cause is shown. This court's case law establishes good cause has two elements. Number one, the government must show that production of the witness would be difficult or expensive and two, that the evidentiary alternative it seeks to use in its place is reliable. In this particular case, there's no need for the court to really even consider the reliability of the evidentiary alternative simply because there's no showing at all that production of Thomas, who lives in Kansas City, stationed in Kansas City, that production of his testimony would have been difficult or expensive. Our position is that this testimony was critical for a couple of reasons. As noted above, it was only Thomas that put Mr. Busey leaving the bedroom window or leaving the bedroom. He also indicates... Question on that point. I thought the testifying witness also courted the wife as saying that the two of them came out of the bedroom, or that the defendant came out of the bedroom. Doesn't that flick with your claim that the only evidence of him coming out was the report of Thomas' statement? Yes, Judge. There was... That is accurate. That particular witness, Miller, did interview Ebony Hicks, the wife of Mr. Busey, who did not come out of the bedroom. I'll have to look at the transcript. I think she indicated she was coming out of the bedroom, and possibly Mr. Busey was coming out of the bedroom. I know she indicated she had been in the bedroom when the door was breached. I'll have to look at the transcript. I'll verify that. I'm wondering if the Thomas testimony about coming out of the bedroom was cumulative of the wife saying the same thing, but if you're not clear on the record, we'll check it. I'll double-check that before my rebuttal, Judge, but regardless, let's assume that she did indicate that. It would be our position that the court did not rely on that. That also would be hearsay testimony. She also provided other testimony. She also said that she and Mr. Busey resided in the living room, that they did not reside in the bedroom. She denied having any knowledge of the drugs or the guns. My point here, Judge, we would not concede that whatever she said would be considered a reliable alternative in the same way that perhaps Agent Miller's testimony could be considered reliable. There may be snippets or portions of her testimony that might arguably corroborate what Agent Miller said, but there's also portions of her testimony or her statement. I say testimony. She didn't testify. There are portions that she said that would benefit Mr. Busey. The judge, and I don't really believe the district court, relied on what those statements were. But secondly, and perhaps more importantly, it is only Thomas that indicated that this gun was found in plain view, which is a critical fact, because especially if a person lives in a house and something is in plain view, then there is case law from this court that says if you have knowledge and some exercise of control over the premises, that can be considered constructive possession. So that was a critical fact. Thomas was the only person to speak to that. We did object to that testimony as well. Those two pieces of evidence in tandem are relevant to the court's evidentiary finding that Mr. Busey committed a grade A violation. That was finding this powdery substance that was on top of the kitchen cabinet. That certainly was not in plain view. It was very high up. Agent Miller, who was very tall, had to stand on a cooler to find it. But we would submit that the court's finding or the evidence about the gun being in plain view and Mr. Busey's connection to the bedroom and the drugs being thrown out were all kind of part and parcel of the court's finding that, well, I'm also going to conclude he did constructively possess this powdery substance found on top of the cabinet. We see those two pieces, those facts as related and supportive of the court's finding that Mr. Busey was good for a grade A violation. I do notice I'm already well into my rebuttal time. Unless the court has any questions, I would like to reserve the two and a half minutes I have left for rebuttal.  You may. Thank you for your argument. Mr. Coffey, we'll hear from you. May it please the court, my name is Phil Coffey and I represent the government in this case. Before I get into my argument, I know I'm going to forget this if I don't mention it, we do make the point that assuming the court finds that there was no error or no reversible error, we note that the judgment fails to conform with the court's, the written judgment fails to conform to the oral judgment which finds the class, I'm sorry, the grade A felony. That was just an oversight in our view and we think that the written judgment needs to be corrected to include that. So all right. Should that be handled by a motion by you to correct the clerical error in the district court? You didn't file a cross appeal, so I'm wondering what would be our authority to order anything, any relief for the government? I think I've seen it done before without a cross appeal, so, but. Could it be done by a motion? The sentence is what it is and so, but I think it should be, that's an interesting question which I hadn't thought about. Could it be done by a motion in the district court if you think it was just a clerical error? Well, it clearly was, your honor, because as I said, the judge on the record found the A violation, so that's not a, that's really not an issue, but in any event, let me move on and to answer your question about what did the wife testify, Ebony Hicks, this is from page 27 of the revocation transcript. Did you receive information from Ms. Hicks on where she was located and where Mr. Busey was located when the marshals knocked on the door? I did, sir. What was that? She said they were staying in the bedroom. They were coming from the bedroom to the front door when the marshals breached and made contact with them and did she make any statements to you regarding whether or not she owned the firearm that was found as well as the alleged narcotics that were found and she said she denied ownership of the firearm and the drugs and any knowledge of the, and any knowledge of the contraband found. So essentially our argument in this case is that even if you subtract completely the testimony that Mr. Moss objects to on appeal, and I think it's very important to note what that is, he's saying that Agent Miller should not have been allowed to testify regarding Deputy Thomas' statements. So if we take that testimony and we remove it, we are left with exactly the same record. And why? Well first of all, Stephanie Werning, the probation officer, she testifies that when the drugs are being thrown out that they breached the apartment and that they found a firearm in the bedroom. Now she doesn't use the words plain view, but she says on the bedroom floor. We have pictures of that firearm on the bedroom floor. So she doesn't use the two words plain view, but other than that, that's the same evidence. So she testifies to that. Now at one point he did object early on and he says, I'm going to object as to hearsay and foundation, and the judge sustains the objection and says to Ms. Werning, you want to clarify or something like that. And then she proceeds to give the testimony about listening to the phone call from Thomas that the drugs are being thrown out the window, that they breached, that they find a firearm on the floor of the bedroom. So that testimony is already in the record. It's not being challenged on appeal. And then you have Ebony Hicks' testimony about being in the bedroom when they breach. So when you put the testimony of those two witnesses together, what we get from the actual evidence that's being objected to makes absolutely no difference in this case. Now we have photographs showing the gun on the floor. We have photographs showing where it is once it was pushed, put on the bed. We know that Hicks and our defendant were the only two people in that apartment when it was entered. Yes, granted that the judge credited all of the evidence in the case, but what we're saying is it's the same evidence to the extent that Stephanie Werning is testifying about what the deputy told her. That's the same evidence he's later objecting to. But again, it's already in the case. So essentially, I don't want to wear out my animal analogies, but, you know, the cat is out of the bag, the horse is out of the barn. That all happened before Agent Miller ever testified, and then, of course, he testified without objection to what Ebony Miller told him. So our argument here is regardless of whether or not the judge should have sustained the objections that the defendant made in this case, we have the same record. We have exactly the same thing with the hearsay testimony that he didn't object to. And so I've got four minutes and 17 seconds, but I guess there's no requirement that I use it. So unless there's some questions, I would urge the court to uphold the case, and I do think, again, that it's proper to set it back to fix that, but I can't give you a case, but I think it's happened in my cases before where we've noticed an error of that nature. Thank you. Well, I have a legal question for you since you have time left. Thank you. Mr. Moss says that if the deputy was available, then that's necessarily an error, constitutional error, or a Rule 32 error. Has this court ever held that, or is it an open question whether even if the witness was available, that reliable hearsay might still satisfy the due process clause? Your Honor, to be honest, I don't know that there is a case. I mean, it's a two-step process, and I think the case law is at least fairly clear to me that no matter how reliable, I suppose maybe you could, certainly you could get to a harmless error argument, I think, but I think, generally speaking, if the government can't get past the first step, which is to show that the individual was... I was wondering if you have a case where the court has ever so held. I question whether there is such a holding. I don't know of one, to be honest with you, but like I said, generally speaking, they stop at the... Well, actually, they usually don't stop at the first step. They usually do both steps, even if the first step, they don't, you know, even if they don't find that the government is burdened as step one. I notice in this court's cases, they do usually go to both steps, but... All right. Thank you for your thoughts on that, and thank you for your argument. All right. Thank you. You're welcome. I'm not... On the cross-appeal, I guess, if you don't have any authority on that, you know, there is authority, of course, from the Supreme Court that if there's no cross-appeal... Right. ...you're not supposed to... Right, except that I'm thinking that if there was an error in the judgment, that's something that the court... And I think they've done it on their own in some instances, too. All right. We'll take a look at that. Thank you. Mr. Moss, we'll hear from you in rebuttal. Thank you, Your Honor. Very briefly, I do believe the two-step process for good cause, both are required. In other words, I don't think one or the other is sufficient, so despite reliability, we don't believe that it would be sufficient unless they show that production was also difficult or expensive or one of the other bases, and I think a lot of that is... Do you have a case you think is so held? I think this court's cases, when you talk about good cause, requires two things. It requires these things. I don't know that that's been suggested or that's been addressed, but I guess it's implicit, Your Honor, when the court says there's two requirements or two prongs that both of them need to be met. Now, some of those cases talk about balancing, which is different from two prerequisites. I do. I know that there are the balancing cases, but I do think those balancing cases presume that both prongs have been met. However, I don't have a case specifically addressing Your Honor's point. Real briefly, Your Honor, regarding Ebony Hicks, I did object to the testimony of Ebony Hicks as hearsay. That objection is listed on page 26 from 12 to 16. There were a couple of objections. One was marital privilege, but I also did object on the basis of hearsay to the admission of her testimony. That objection was not sustained. To the extent the court or the government wants to rely on the testimony of Hicks to say that this error was harmless, we don't believe it is because her testimony was also hearsay. Unlike the detective or the agent, the reliability concerns are way, way lower with her than they would be with regard to law enforcement. Secondly, the last point I want to make before my time expires. I'll give you time to make your last point, but I didn't see that you appealed anything about the Hicks testimony. I thought you only appealed the testimony that was raised about this deputy. That's correct. They're relying on the testimony of Hicks to show that the error is harmless. Their verdicts show that the error is harmless. I don't think they can rely on what should be inadmissible evidence to show that an error is harmless. I think the counterpoint to that would be that it's in the record and you didn't appeal that it's in the record, so why can't they rely on it? We appealed the hearsay evidence of Miller because we felt that was the most critical. They come back with Hicks and say, well, she testified to this, but there is an objection to that, which in my view should have been sustained. That's your last point. Go ahead. The last point, really briefly, is just so the record is clear, Miller could not even testify regarding where this gun was located. We know Thomas says it's in plain view. If the court looks at page 41, that's when I'm cross-examining him about where the gun is. All he can say is it's on the floor somewhere. He knows it's not pictured in a bigger photo of the bedroom, and he can't say where it is actually located in there. It's not accurate to say that, hey, his testimony was just as good as Thomas because he couldn't even tell us where in the bedroom the gun was located in quote-unquote plain view. For those reasons, we don't think the error is harmless. That's all I have, Your Honors, and thank you very much. Thank you. Thank you for bearing with me talking over you a couple times, and thank you both for your arguments. The case is submitted, and the court will file a decision in due course.